IN THE
# SUPREME COURT OF THE STATE OF ARIZONA

———————

**A & P RANCH LTD, ET AL.,**
*Plaintiffs/Appellees,*

*v.*

**COCHISE COUNTY, ET AL.,**
*Defendants/Appellants,*

**ARIZONA DEPARTMENT OF REVENUE,**
*Defendant-Intervenor/Appellant.*

———————

No. CV-25-0217-PR
Filed July 24, 2026

———————

Appeal from the Arizona Tax Court
The Honorable Erik Thorson, Judge
No. TX2022-000423
**AFFIRMED**

———————

Opinion of the Court of Appeals, Division One
260 Ariz. 491 (App. 2025)
**VACATED**

———————

COUNSEL:

Kristin K. Mayes, Arizona Attorney General, Kimberly J. Cygan, Assistant Attorney General, Phoenix, Attorneys for Arizona Department of Revenue

Lori A. Zucco, Cochise County Attorney, Dylan Hendel, Civil Deputy County Attorney, Bisbee; and James M. Susa (argued), Cindy K. Schmidt, DeConcini McDonald Yetwin & Lacy, P.C., Tucson, Attorneys for Cochise County

Paul J. Mooney (argued), Paul Moore, Mooney, Wright, Moore & Wilhoit, PLLC, Scottsdale, Attorneys for A & P Ranch LTD., et al.

_____

JUSTICE CRUZ authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ and JUSTICES BOLICK, BEENE, MONTGOMERY, and KING joined.

_____

JUSTICE CRUZ, Opinion of the Court:

¶1   We are asked to determine: (1) whether Arizona's agricultural-property tax statutes require permanent crops, such as orchard trees and vineyard vines, to be valued using standard appraisal methods and techniques when no statute prescribes a specific valuation method for those crops; and (2) whether the court of appeals erred in holding that the valuation method prescribed in A.R.S. § 42-13101 for "land used for agricultural purposes" applies not only to the land itself but also to permanent crops growing on the land.

¶2   In essence, both issues concern whether Arizona's agricultural-property tax statutes prescribe a valuation method for permanent crops or whether those crops must instead be valued at full cash value using standard appraisal methods and techniques. We conclude that permanent crops qualifying as agricultural property under A.R.S. § 42-12151 are valued under the income approach prescribed by § 42-13101 and may not be separately valued using standard appraisal methods and techniques under A.R.S. § 42-11001(6).

## BACKGROUND

¶3   A & P Ranch Ltd. and other entities (collectively, "Plaintiffs") each own separate agricultural property in Cochise County ("County"). A county assessor annually determines the classification, valuation, and full cash value of all taxable property within the county. A.R.S. § 42-13051.

¶4   For tax year 2023, the County Assessor valued Plaintiffs' agricultural properties using the methodology set forth in the Arizona Department of Revenue's Agricultural Property Manual ("Manual"). The assessor valued Plaintiffs' land at $1,800 per acre under § 42-13101. The assessor then separately valued the orchard trees at $12,000 per acre and the vineyard vines at $8,000 per acre using standard appraisal methods and

techniques to determine market value. The assessor added those values together to determine the full cash value of each property.

¶5        Section 42-13101 prescribes the valuation method for agricultural land. It requires qualifying agricultural land to be valued exclusively under the income approach, using the capitalized average annual net cash rental value of comparable agricultural property, without regard to urban or market influences. § 42-13101.

¶6        Plaintiffs filed suit challenging the 2023 valuation of their agricultural properties. They alleged the valuations were excessive and contrary to law because orchard trees and vineyard vines qualify as agricultural property under A.R.S. §§ 42-12151 and -12152 and, therefore, must be valued under both A.R.S. §§ 42-12002(1) and -13101, not under the latter alone. Plaintiffs requested that the tax court correct the valuations by applying the statutory valuation method. The Department of Revenue ("Department") moved to intervene, and the court granted the motion. The parties then filed cross-motions for summary judgment.

¶7        Plaintiffs argued that separately valuing the orchard trees and vineyard vines relied on market influences and violated § 42-13101. The County and the Department disagreed, asserting that permanent crops are improvements to agricultural land and, therefore, may be valued separately. The County argued that orchard trees and vineyard vines are distinct from the underlying land and possess independent value. It further contended that Plaintiffs misread § 42-13101 by construing the statute's reference to "land" to include permanent crops. The Department similarly argued that §§ 42-13101 and -13102 prescribe a valuation method for agricultural land, but not for improvements situated on that land.

¶8        The tax court concluded that § 42-13101 governs the valuation of agricultural land and that the statute does not distinguish between "land" and "permanent crops." The court, therefore, held that permanent crops must be valued together with the underlying land under § 42-13101. The court also found that no statute expressly classifies orchard trees or vineyard vines as improvements to land. Accordingly, the court granted summary judgment for Plaintiffs and entered judgment against the County and the Department.

¶9    The County and the Department appealed.  The court of appeals affirmed, holding that permanent crops, including orchard trees and vineyard vines, must be valued together with the underlying land under the income approach prescribed by § 42-13101.  *A & P Ranch Ltd. v. Cochise County*, 260 Ariz. 491, 493 ¶ 1 (App. 2025).  The County and the Department petitioned for review.

¶10    We granted review to clarify the interaction between Arizona's agricultural-property classification statutes and valuation provisions, an issue of statewide importance concerning the uniform assessment of agricultural property.  We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶11    We review the tax court's grant of summary judgment de novo.  *Wilderness World, Inc. v. Dep't of Revenue*, 182 Ariz. 196, 198 (1995).  We likewise review questions of statutory interpretation de novo.  *SolarCity Corp. v. Ariz. Dep't of Revenue*, 243 Ariz. 477, 480 ¶ 8 (2018).

¶12    "We review issues construing statutes and rules de novo." *Ariz. Pub. Integrity All. v. Fontes*, 250 Ariz. 58, 61 ¶ 8 (2020).  And "we begin with the text" when construing statutes.  *Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409, 411 ¶ 8 (2023).  We interpret statutes "according to the plain meaning of the words in their broader statutory context, unless the [L]egislature directs us to do otherwise."  *In re Drummond*, 257 Ariz. 15, 21 ¶ 19 (2024) (quoting *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286 ¶ 31 (2023)).  But statutory language cannot be read in isolation.  Rather, we interpret statutes in their broader statutory context and in conjunction with related statutes addressing the same subject matter.  *In re Drummond*, 257 Ariz. at 21 ¶ 19; *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017).  If ambiguity remains after applying the ordinary tools of statutory construction, we resolve that ambiguity in the taxpayer's favor.  *San Diego Gas & Elec. Co. v. Ariz. Dep't of Revenue*, 259 Ariz. 105, 108 ¶ 11 (2025) ("In the event of ambiguity, we construe statutes in favor of the taxpayer.").  Arizona's property-tax system consists of four components: classification, valuation, assessment ratio, and tax rate.  *Aileen H. Char Life Int. v. Maricopa County*, 208 Ariz. 286, 291 ¶ 8 (2004).  The Legislature determines a property's classification and valuation methodology, the assessor applies that methodology, the applicable assessment ratio is applied to the

classified value, and the resulting assessed value is multiplied by the applicable tax rate to determine the taxes owed. *Id.*

¶13 This case concerns the interaction between Arizona's agricultural-property classification statutes and its agricultural-property valuation statutes. Specifically, we must determine whether permanent crops that qualify as agricultural property under § 42-12151 are valued under the income approach prescribed by § 42-13101 or whether they may instead be separately valued at market value under § 42-11001(6). Resolution of that question requires us to read the relevant statutes as an integrated whole.

¶14 "In construing a specific provision, we look to the statute as a whole and we may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions involved." *State Farm Mut. Auto. Ins. Co. v. Orlando*, 259 Ariz. 531, 534 ¶ 10 (2025) (quoting *Stambaugh*, 242 Ariz. at 509 ¶ 7). Statutes addressing the same subject are construed as though they constitute one law. *State ex rel. Dep't of Econ. Sec. v. Hayden*, 210 Ariz. 522, 523 ¶ 7 (2005). This principle is a fundamental tool of statutory construction. *Orlando*, 259 Ariz. at 536 ¶ 24. It is particularly applicable here because §§ 42-12151 and -13101 address complementary aspects of Arizona's agricultural-property tax scheme.

¶15 Section 42-12151 identifies the property that qualifies for agricultural classification. As relevant here, agricultural real property includes "[c]ropland in the aggregate of at least twenty gross acres" and "[a]n aggregate ten or more gross acres of permanent crops." § 42-12151(1)–(2). These provisions determine which property receives the benefit of agricultural classification.

¶16 Section 42-13101 prescribes how an assessor values qualifying agricultural property. It provides that "[l]and that is used for agricultural purposes shall be valued using only the income approach to value without any allowance for urban or market influences." § 42-13101(A). The statute further directs assessors to determine agricultural income by capitalizing the property's average annual net cash rental. § 42-13101(B).

¶17 Read together, §§ 42-12151 and -13101 establish a unified statutory scheme governing both the classification of agricultural property

and the exclusive method for valuing that property. Section 42-12151 identifies the property qualifying for agricultural treatment, while § 42-13101 prescribes the valuation methodology applicable to that qualifying property. Under § 42-12151(2), agricultural real property may consist of land containing permanent crops. The statute qualifies such property by reference to its "aggregate ten or more gross acres," confirming that the Legislature treated permanent crops as attributes of qualifying cropland rather than as improvements separate from the land. *See* § 42-12151(2). Although § 42-12151 refers to land containing permanent crops, the income approach prescribed by § 42-13101 is based on the agricultural income produced from that land. The permanent trees and vines serve as the means of producing the crop; it is the harvested nuts, fruits, or grapes—not the trees and vines themselves—that generate the net cash rental income used in the statutory valuation. Nothing in the statutory framework suggests that the Legislature intended to remove permanent crops from that unified valuation scheme and to separately value them as improvements.

¶18 The Legislature's choice of language reinforces that conclusion. Several subsections of § 42-12151 expressly refer to "land and improvements." *See* § 42-12151(4)–(12). By contrast, subsections (1) and (2), governing cropland and permanent crops, contain no such language. When the Legislature uses different language within the same statutory scheme, we presume it intended different meanings. *Comm. for Pres. of Established Neighborhoods v. Riffel*, 213 Ariz. 247, 249–50 ¶ 8 (App. 2006). We therefore decline to insert language the Legislature omitted. *See City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965) ("A fundamental rule of statutory construction is that courts will not read into a statute something which is not within the manifest intention of the [L]egislature as gathered from the statute itself.").

¶19 Accordingly, when § 42-13101 refers to "[l]and that is used for agricultural purposes," that phrase encompasses agricultural property qualifying under § 42-12151(2) by virtue of its permanent crops. In other words, it is the presence of permanent crops that provides the defining feature that qualifies land as "agricultural property." The land and the crops then serve as the taxable unit. The Legislature did not separately classify permanent crops as improvements for purposes of agricultural-property valuation.

**¶20**  The statutory text alone resolves this case. The Legislature's purpose confirms that reading. Arizona's property-tax scheme values property according to its statutorily prescribed current use. *See Mesquite Power, LLC v. Ariz. Dep't of Revenue*, 258 Ariz. 1, 10 ¶ 39 (2024) (recognizing that valuation under Arizona's property-tax statutes reflects the property's current use); *Golder v. Dep't of Revenue*, 123 Ariz. 260, 265–66 (1979) (holding that agricultural property is valued according to its current agricultural use rather than its highest and best use). Arizona courts have long recognized that this approach protects agricultural production from the tax burdens that would result if farmland were valued according to surrounding development or speculative market forces. *See Maricopa County v. State*, 187 Ariz. 275, 281 (App. 1996); *Golder*, 123 Ariz. at 265.

**¶21**  Although orchard trees and vineyard vines are physically distinguishable from the underlying soil, the Legislature chose to treat qualifying agricultural property as a single unit for valuation under §§ 42-12151 and -13101. The statutory scheme, therefore, does not permit assessors to separate permanent crops from the qualifying agricultural property and value them under a different methodology.

**¶22**  Section 42-13101 implements that legislative policy by requiring agricultural property to be valued "using only the income approach to value without any allowance for urban or market influences." We give effect to every provision of the statutory scheme and avoid constructions rendering statutory language superfluous. *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019). Permitting assessors to assign a separate market value to permanent crops would reintroduce precisely the market influences that § 42-13101 directs assessors to disregard. Rather than valuing agricultural property according to its productive agricultural use, the assessor would supplement the Legislature's prescribed income methodology with a second valuation method based upon market value. That approach is inconsistent with the text and undermines the purpose of Arizona's agricultural-property valuation statutes.

**¶23**  Section 42-13101(B) requires assessors to determine value by capitalizing the property's average annual net cash rental using comparable agricultural property. Comparable orchards and vineyards necessarily command rental values reflecting the productive characteristics created by permanent crops. Thus, the Legislature's prescribed methodology captures the economic contribution of those crops through the property's

income-producing capacity. Because permanent crops qualify the property for agricultural treatment under § 42-12151, and § 42-13101 prescribes the exclusive valuation methodology for that property, assessors may not separate one component of qualifying agricultural property and value it under a different methodology.

¶24 By first valuing qualifying agricultural property using the income approach and then separately assigning market value to the orchard trees or vineyard vines, the assessor effectively subjects the same productive agricultural value to two separate and cumulative valuation methodologies. That result is inconsistent with the Legislature's decision to prescribe a single income-based valuation methodology for qualifying agricultural property and with its express directive that Title 42 "shall not be construed to require or permit double taxation." A.R.S. § 42-11003. We decline to construe the valuation statutes in a manner that produces the very double taxation the Legislature has expressly forbidden.

¶25 Section 42-11001(6) does not compel a different result. That statute provides that full cash value is synonymous with market value only when no statutory valuation method has been prescribed. Here, however, the Legislature has prescribed a valuation method. Once property qualifies for agricultural valuation under § 42-12151, then § 42-13101 governs how that property is valued. Therefore, resorting to a separate market valuation of permanent crops under § 42-11001(6) is neither necessary nor authorized.

¶26 Nor does our interpretation render the general valuation statutes superfluous. Property that does not qualify for agricultural valuation remains subject to valuation under the general provisions of Title 42, including § 42-11001(6). The Legislature simply established a different valuation methodology for qualifying agricultural property. Had it intended permanent crops to be removed from that unified valuation system and separately valued according to market value, it would have said so expressly.

¶27 The Department nevertheless argues that permanent crops constitute improvements that may be separately valued under its Manual. This dispute arises from that administrative classification. The Manual instructs assessors that permanent crops are improvements to land and should be valued separately from the land using market-based considerations.

**¶28** The Manual's approach, however, conflicts with the statutory framework. Sections 42-12151 and -13101 neither classify permanent crops as separately taxable improvements nor authorize assessors to employ a second, market-based valuation methodology for those crops. Instead, the Legislature prescribed one valuation method for qualifying agricultural property and directed that it be applied "without any allowance for urban or market influences."

**¶29** The Department undoubtedly possesses the authority to prepare manuals and guidance implementing Arizona's property-tax statutes. *See* A.R.S. § 42-11054(A)(2) (directing the Department to "[p]repare and maintain manuals and other necessary guidelines, *consistent with this section*, reflecting the standard methods and techniques to perpetuate a current inventory of taxable property and the valuation of that property" (emphasis added)). But implementation differs from alteration. The Legislature authorized the Department to administer the statutory valuation scheme—not to redefine qualifying agricultural property or adopt a different valuation methodology than the one the Legislature prescribed. Administrative guidance may assist in applying the statutes, but it cannot revise or supersede them. *See* A.R.S. § 42-2080(A); *Maricopa County v. Viola*, 251 Ariz. 276, 279 ¶ 11 (App. 2021).

**¶30** Nor may an administrative manual expand the taxing authority granted by statute. Taxing authority "must be made clearly to appear[,] and doubts, if any, as to the power sought to be exercised must be resolved against" the taxing authority. *City of Phoenix v. Ariz. Sash, Door & Glass Co.*, 80 Ariz. 100, 102 (1956). Consistent with that principle, we have recognized that when interpreting a political subdivision's authority to impose a tax, doubts concerning the scope of that authority are resolved against the taxing authority. *Vangilder v. Ariz. Dep't of Revenue*, 252 Ariz. 481, 488 ¶ 26 (2022). Nothing in Arizona's agricultural-property statutes clearly authorize the separate market valuation of permanent crops.

**¶31** The Manual directs assessors to substitute market-based judgments for the Legislature's prescribed income methodology. To the extent the Manual requires assessors to assign separate market values to permanent crops in addition to valuing qualifying agricultural property under § 42-13101, it departs from the statutory framework established by the Legislature and is void.

**¶32** Any practical difficulty in applying the Legislature's chosen valuation methodology is a matter for the Legislature—not the Department—to address. Courts, likewise, may not rewrite the statutory framework in the name of administrative convenience. Our task is to apply the valuation system that the Legislature enacted.

**¶33** We, therefore, conclude that land with permanent crops qualifying as agricultural property under § 42-12151 must be valued under the income approach prescribed by § 42-13101. Because the Legislature has prescribed that valuation methodology, county assessors may not separately value permanent crops using standard appraisal methods and techniques under § 42-11001(6). Accordingly, the Manual is unenforceable to the extent it classifies permanent crops as separately market-valued improvements or otherwise conflicts with the governing statutes.

## CONCLUSION

**¶34** Land with permanent crops that qualifies as agricultural property under § 42-12151 is valued under the income approach prescribed by § 42-13101. Read together, §§ 42-12151 and -13101 establish a unified framework governing both the classification of agricultural property and the exclusive method for valuing that property. Because the Legislature has prescribed a specific valuation methodology, county assessors may not separately value permanent crops using standard appraisal methods and techniques under § 42-11001(6).

**¶35** The Manual cannot alter that statutory framework. Although the Department may issue guidance to assist in implementing Arizona's property-tax statutes, it may not adopt a valuation methodology inconsistent with the one the Legislature enacted. To the extent the Manual classifies permanent crops as separately market-valued improvements, it conflicts with Arizona's agricultural-property tax statutes and is not controlling.

**¶36** Although we agree with the court of appeals' ultimate disposition, we vacate its opinion to replace its reasoning with our own. We affirm the tax court's judgment.

**ATTORNEY FEES**

**¶37**      Plaintiffs request an award of attorney fees and costs under A.R.S. § 12-348(B).  Although the County asked this Court to reverse the court of appeals' award of attorney fees, neither the County nor the Department opposed Plaintiffs' request for attorney fees incurred in this Court.  Section 12-348(B)(1) authorizes a court to award reasonable attorney fees and other expenses to a prevailing party in an action challenging the assessment, collection, or refund of taxes.  Because Plaintiffs prevail in this tax appeal, we award them their reasonable attorney fees and costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.